FILED
SKAGIT COUNTY CLERK
SKAGIT COUNTY, WA

2015 JAN 15 PM 2:51

IN THE SUPERIOR COURT, FOR SKAGIT COUNTY
STATE OF WASHINGTON

SHAYNA ROBERTS and BRYAN G.
ROBERTS, Individually and as Co-Personal
Representatives of the ESTATE of DAVID
JAMES ROBERTS, a deceased minor child,

Plaintiffs,

v.

RAQUEL ELIASEN and NICHOLAS
ELIASEN, a married couple, dba, Little
Rascals Daycare; RICHARD ELISASEN and
JANE DOE ELIASEN, a married couple.

Defendants.

NO: 15 2 00073 2

COMPLAINT FOR DAMAGES FOR
WRONGFUL DEATH AND
SURVIVAL ACTION

## I.  PARTIES AND JURISDICTION

1.1    Plaintiffs Shayna Roberts and Bryan Roberts are husband and wife. They are the natural parents of David James Roberts, a minor child, now deceased. David was born on July 6, 2010 and died in King County, Washington on January 20, 2013.

1.2    Following the death of their son, David James Roberts, Plaintiffs Shayna and Bryan Roberts were appointed co-personal representatives of the Estate of David

COMPLAINT FOR DAMAGES-- 1

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA 98116
206-230-4922/ FAX 206-937-2119



1    James Roberts in King County Cause 14-4-00433-5 SEA.

2    1.3    Shayna and Bryan Roberts, in their capacity as co-personal

3    representatives of the Estate of David James Roberts, are legally authorized to bring

4    claims on behalf of David's Estate.

5    1.4    Plaintiffs Shayna and Bryan Roberts, along with their son David were, at

6    all times relevant to this Complaint, residents of Skagit County, Washington.

7

8    1.5    The Defendants, Raquel Eliasen and Nicholas Eliasen were, at all times

9    relevant to this Complaint, a married couple residing in Island County, Washington. All

10    individual acts and/or admissions of Raquel Eliasen and Nicolas Eliasen as alleged

11    herein were done for the benefit of, and in furtherance of, the interests of the marital

12    community composed of Raquel and Nicholas Eliasen, rendering the marital

13    community and each of the individual defendants Raquel and Nicholas Eliasen jointly

14    and severally liable to the plaintiffs herein.

15

16    1.6    Defendant Richard Eliasen is the father of Defendant Nicholas Eliasen.

17    Jane Doe Eliasen is a fictitious name used to represent the spouse, if any, of defendant

18    Richard Eliasen; her correct name will be added by amendment as learned through

19    discovery. All acts and/or admissions of each individual defendant Richard and/or Jane

20    Doe Eliasen, as alleged herein, were done for the benefit of, and in furtherance of, the

21    interests of the Richard Eliasen marital community, rendering the marital community

22    and each of the individual defendant Richard and Jane Doe Eliasen jointly and severally

23    liable to the plaintiffs herein.

24

25

26    COMPLAINT FOR DAMAGES-- 2

LINDELL LAW OFFICES, PLLC
4400 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-280-4922/ FAX 206-937-2110

1.7     At all times relevant to this Complaint, Defendants Raquel and Nicholas Eliasen, along with Defendants Richard Eliasen and Jane Doe Eliasen, owned the property located at 3192 Weida View Lane in Island County, Washington.

1.8     At all times relevant to this Complaint, Defendants Raquel and Nicholas Eliasen lived in a home located on the property at 3192 Weida View Lane in Island County, Washington.

1.9     At all times relevant to this Complaint, Defendants Raquel and Nicholas Eliasen owned and operated Little Rascals Daycare out of their home located at 3192 Weida View Lane in Island County, Washington.

1.10    Based on information and belief, David James Roberts suffered the injury that resulted in his death while he was attending Little Rascals Daycare.

1.11    In 2013, following the death of David James Roberts and with legal proceedings pending in Island County Superior Court against Defendants Raquel Eliasen and Nicholas Eliasen, Defendants Raquel and Nicholas Eliasen moved out of Washington State to the State of Maine, where they currently reside.

1.12    In 2013, following the death of David James Roberts, Defendant Richard Eliasen also moved out of Washington State to the State of Maine, where he currently resides.

1.13    Jurisdiction is proper in the State of Washington, and this Court has jurisdiction over this matter and all parties under RCW 4.28.185(1)(b).

1.14    An affidavit to the effect that personal service cannot be made on the

COMPLAINT FOR DAMAGES-- 3

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4929/ FAX 206-937-2119

1  defendants within Washington State has been filed in relation to this case pursuant to

2  RCW 4.28.185(4).

3      1.15    Venue is proper in Skagit County pursuant to Civil Rule 82(a)(3)

4  because the Defendants no longer reside in Washington State and Plaintiffs Shayna and

5  Bryan Roberts reside in Skagit County, Washington.

6

7          II.     **FACTS GIVING RISE TO LIABILITY**

8      2.1     In December 2012, David James Roberts began attending Little Rascal's

9  Daycare.

10     2.2     Little Rascals Daycare, at all times relevant to this Complaint, was

11 owned and operated by defendants Raquel Eliasen and her husband, Nicholas Eliasen,

12 out of their home located at 3192 Weida View Lane, in Island County, Washington.

13

14

15

16  

17

18

19

20

21

22

23

24

25 COMPLAINT FOR DAMAGES-- 4

26

LINDELL LAW OFFICES, PLLC
4400 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA 98116
206-230-4022/ FAX 206-937-2119

2.3     According to Washington property tax forms related to 3192 Weida View Lane, Defendant Richard Eliasen also resided at 3192 Weida View Lane.

2.4     The Little Rascals Daycare was a childcare business wherein Raquel and Nicholas Eliasen provided care to children in exchange for a fee.

2.5     Since the Little Rascal's Daycare opened for business, Raquel Eliasen and Nicholas Eliasen, at various times, failed to comply with the rules, regulations, and laws that the State of Washington required in order to lawfully operate an in-home daycare.

2.6     Prior to David attending the Little Rascals Daycare, Nicholas Eliasen had been convicted of the felony crime of Residential Burglary.

2.7     Prior to David attending, and while David attended Little Rascals Daycare, defendant Nicholas Eliasen still had not completed all of the conditions that the Kitsap County Superior Court ordered Nicholas Eliasen to complete in the sentence imposed by that court in his felony burglary case.

2.8     Prior to David attending the Little Rascals Daycare, Nicholas Eliasen had been charged with the crime of Malicious Mischief.

2.9     The Malicious Mischief charge filed against Nicholas Eliasen was subsequently dismissed after Nicholas Eliasen reportedly entered and completed an anger management program.

2.10    On information and belief, prior to and on January 18, 2013, Raquel Eliasen was aware that Nicholas Eliasen had failed to comply with all of the rules,

COMPLAINT FOR DAMAGES-- 5

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA 98116
206-280-4923/ FAX 206-087-2119

regulations, and laws that the State of Washington required in order to lawfully work in and/or operate an in-home daycare, and Nicholas Eliasen was likewise aware that Raquel Eliasen had failed to comply with all of the rules, regulations, and laws that the State of Washington required in order to lawfully operate an in-home daycare.

2.11    During the time period when David James Roberts attended Little Rascals Daycare, including January 18, 2013, Defendant Richard Eliasen was aware that Raquel and Nicholas Eliasen were operating a daycare business on the premises located at 3192 Weida View Lane in Island County, Washington.

2.12    During the time period when David James Roberts attended Little Rascals Daycare, including on January 18, 2013, on information and belief, Defendant Richard Eliasen knew or reasonably should have known that children, like David, who were attending Little Rascals Daycare would be supervised by and receive care from persons who were not properly qualified, who had been convicted of a felony crime, who had anger management issues, and who violated Washington State laws, rules and regulations intended to ensure the safety and proper supervision of children in the Little Rascals Daycare.

2.13    When David enrolled in, and when David attended, the Little Rascals Daycare, including on January 18, 2013, the defendants did not inform the plaintiffs that there were periods when the daycare was not in complete compliance with laws, rules and regulations required by the State of Washington to operate an in-home daycare.

2.14    When David enrolled in, and when David attended, the Little Rascals

COMPLAINT FOR DAMAGES-- 6

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4922/ FAX 206-937-2110

Daycare, including on January 18, 2013, the defendants did not inform the plaintiffs that the daycare was repeatedly in violation of Washington State laws, rules and regulations designed to protect the safety of children in home child care agencies.

2.15    When David enrolled in, and when David attended, the Little Rascals Daycare, including January 18, 2013, the defendants did not inform the plaintiffs that a person working in the daycare and who would be supervising and providing care for David had been convicted of a felony crime, had not fulfilled all of the terms of the sentence for that crime, and had a history of anger management issues.

2.16    On January 18, 2013, Plaintiff Shayna Roberts dropped David off at the Little Rascals Daycare at approximately 6:30 to 7:00 a.m.

2.17    On January 18, 2013, David was approximately 2 foot 10 inches tall and weighed approximately 29 pounds.

2.18    On January 18, 2013, at the time Plaintiff Shayna Roberts left her son at Little Rascals Daycare, David did not have a fractured skull and he was not experiencing subdural hemorrhaging.



2.19    On January 18, 2013, Defendants Raquel and Nicholas Eliasen were the

COMPLAINT FOR DAMAGES-- 7

LINDELL LAW OFFICES, PLLC
4400 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4022/ FAX 206-087-2119

1   only adults who provided David James Roberts with childcare while David was at the

2   Little Rascals Daycare.

3       2.20   On January 18, 2013, at approximately 5:10 p.m. Raquel Eliasen

4   telephoned the plaintiffs, Shayna and Bryan Roberts, and informed them that David was

5   at the daycare unresponsive and that he was having difficulty breathing.

6

7       2.21   Between the time when Plaintiff Shayna Roberts dropped David off at

8   the Little Rascals Daycare and the time Defendant Raquel Eliasen reported David was

9   unresponsive, David was under the constant and exclusive care, observation, and

10  supervision of either Defendant Raquel Eliasen or Defendant Nicholas Eliasen, or both.

11      2.22   After informing the plaintiffs of David's condition, defendant Raquel

12  Eliasen telephoned the 911 emergency medical services phone number.

13
14      2.23   When Raquel Eliasen telephoned 911, she told the 911 emergency

15  operator that David had started crying, went to the floor, and had lost consciousness.

16      2.24   When emergency medical personnel arrived at Little Rascals Daycare

17  they found David unresponsive and observed he was having difficulty breathing.  David

18  was transported by ambulance to the emergency room at Whidbey General Hospital.

19
20      2.25   A CT Scan performed on David's head by emergency room physicians at

21  Whidbey General Hospital revealed that David had suffered a catastrophic skull fracture

22  injury and concomitant subdural hemorrhage.

23      2.26   David's medical condition continued to deteriorate due to the severity of

24  his skull fracture and the accompanying subdural bleeding.

25

26  COMPLAINT FOR DAMAGES-- 8

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4922/ FAX 206-937-2110

1

2.27    After the skull fracture and subdural hemorrhage were discovered, David

2

was transported from Whidbey General Hospital to Harborview Medical Center in

3

Seattle, Washington.

4

2.28    After David arrived at Harborview, physicians confirmed that David had

5

suffered a traumatic brain injury and they noted the presence of retinal hemorrhaging.

6

7

2.29    David never regained consciousness.    David's mother and father

8

remained at David's hospital bedside over the next day and a half.  Shortly after 7:00

9

a.m. on January 20, 2013, David passed away as a direct result of injuries he suffered

10

when his skull was fractured.

11

12

13

14



15

16

17

18

19

2.30    Prior to David's death, based upon David's injuries, physicians at

20

Harborview requested that Kenneth Feldman, M.D. examine David.   Physicians at

21

Harborview Medical Center recognized Dr. Feldman as an expert in injuries to children

22

caused by acts of physical abuse.

23

24

2.31    Prior to David's death, Dr. Feldman examined David and reviewed the

25

26

COMPLAINT FOR DAMAGES-- 9

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4022/ FAX 206-987-2119

records of the treatment David received relating to his skull fracture. Based upon David's clinical history, Dr. Feldman concluded that it was unlikely David's skull fracture resulted from a fall from standing height, but was instead more consistent with David having suffered a severe whiplash event associated with a concurrent impact sufficient to cause David's skull to fracture.

2.32    Dr. Feldman also concluded from his examination that the skull fracture David suffered was sufficiently serious that either David would have been unconscious immediately after suffering the injury or, if David had not been rendered immediately unconscious, he would have been only briefly conscious after suffering the injury. Dr. Feldman expressed concern that David's skull fracture had been inflicted.

2.33    An autopsy performed on David by a member of the office of the King County Medical Examiner concluded that David died of a skull fracture and subdural hemorrhage resulting from a blunt force injury of the head.

2.34    On January 23, 2013 a detective with the Island County Sheriff's Office asked defendant Raquel Eliasen some general questions about the circumstances surrounding David's injury. Raquel alleged that at approximately 5:00 p.m. on January 18, 2013, when David was standing nearby, she heard David make a strange sound and saw that his eyes then rolled in his head and he fell over backward onto the mat he had been standing on. Raquel alleged that, in response to David's collapse, she and/or her husband Nicholas, threw or splashed water on David. Raquel did explain that during the day David suffered his injury he had been more needy than usual, and that she had

COMPLAINT FOR DAMAGES-- 10

1   tried to distract him at times and at other times had simply told him she could not pick

2   him up.  Raquel Eliasen denied that David had fallen or that he'd suffered any injury,

3   intentional or accidental, on January 18, 2013 while David was at Little Rascals

4   Daycare.

5

6       2.35    On or about February 4, 2013, a detective with the Island County

7   Sheriff's Office asked Nicholas Eliasen some general questions about the circumstances

8   surrounding David's injury.  Like his wife, Nicholas alleged that at about 5:00 p.m.

9   David suddenly made a strange sound, wobbled, then fell over backwards onto the mat

10  he had been standing on.  Nicholas also explained that, after David collapsed, he

11  suggested throwing water on David.  Similar to the story his wife told police a week

12  earlier, Nicholas Eliasen denied that David had previously fallen or that he had suffered

13  any injury, intentional or accidental, on January 18, 2013 while David was at Little

14  Rascals Daycare.

15

16      2.36    In contrast with Dr. Feldman's medical conclusion that David's injuries

17  were consistent with a severe whiplash event and concurrent impact to the skull, an

18  injury that Dr. Feldman concluded would have resulted in David losing consciousness

19  shortly after suffering the injury, both Raquel Eliasen and Nicholas Eliasen denied that

20  on January 18, 2013 David had either fallen or suffered any intentional or accidental

21  injury while in their care.

22

23      2.37    Dr. Feldman subsequently reported that, based on his child abuse

24  pediatric training and experience, his examination of David, his review of records and

25

26  COMPLAINT FOR DAMAGES-- 11

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4922/ FAX 206-937-2119

information relating to David's death, and in consideration of the descriptions of events given by defendants Raquel Eliasen and Nicholas Eliasen about David having collapsed at the daycare, that he would not be hesitant to list the manner of David's death as homicide.  (A copy of Dr. Feldman's June 6, 2013 report is included as an Appendix to this Complaint and incorporated herein by this reference.)

2.38    Because defendants Rachel and Nicholas Eliasen were the only adults present during the time period when David suffered his skull fracture injury, no other adult witnessed the event resulting in David's skull fracture.

2.39    The catastrophic skull fracture and resulting injuries David suffered on January 18, 2013 are not injuries of the type that ordinarily occur to a child in a daycare absent someone's negligence.

2.40    The severe whiplash event with a concurrent impact of sufficient force and velocity to cause David's skull to fracture as described by Dr. Feldman, is not the type of injury that occurs to a child in a daycare absent someone's negligence.

2.41    On January 18, 2013, during the time period when David was at the Little Rascals Daycare, defendants Raquel Eliasen and Nicholas Eliasen had exclusive control and management of Little Rascals Daycare.

2.42    On January 18, 2013, during the time period when David was at Little Rascals Daycare, David was under the exclusive control and supervision of defendants Raquel and Nicholas Eliasen.

2.43    David's skull fracture and the injuries that resulted in David's death were

COMPLAINT FOR DAMAGES-- 12

LINDELL LAW OFFICES, PLLC
4400 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4022/ FAX 206-937-2119

1   not due to any voluntary action or contribution on his part.

2       2.44    David's skull fracture and the injuries that resulted in David's death were

3   not due to any voluntary action or contribution on the part of plaintiffs Shayna and

4   Bryan Roberts.

5       2.45    On information and belief, on January 18, 2013, the negligent acts and/or

6   omissions of defendants Raquel Eliasen and Nicholas Eliasen, while acting individually

7   and/or as one acting as an accomplice for the other, caused David to suffer the

8   catastrophic skull fracture and head injuries that resulted in his death.

9       2.46    Following David's death, the Washington Department of Social and

10   Health Services ("DSHS") conducted an investigation into the circumstances under

11   which David died.  Specifically, the DSHS investigated whether or not David had been

12   abused or neglected by his daycare caretakers.

13       2.47    The DSHS concluded that allegations that David suffered "negligent

14   treatment or maltreatment" and/ or "physical abuse" by Rachel and Nicholas Eliasen

15   while at Little Rascals Daycare were founded.

16       2.48    Subsequently, as part of an administrative review, the DSHS changed its

17   findings to "unfounded" for the stated reason that the DSHS was unable "to determine

18   which of the two providers [Raquel Eliasen or Nicholas Eliasen] inflicted David's fatal

19   injuries."

20       2.49    As part of an investigation into David's death by the DSHS Division of

21   Licensed Resources, the State of Washington ordered that defendant Raquel and

COMPLAINT FOR DAMAGES-- 13

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4922/ FAX 206-937-2119

1  Nicholas Eliasen's license to operate Little Rascals Daycare be suspended.

2      2.50   Following David's January 20, 2013 death, the State of Washington,

3  through its Child Protective Services ("CPS") initiated legal dependency proceedings in

4  Island County Superior Court to determine what, if any, limitations should be placed on

5  the access that defendants Raquel and Nicholas Eliasen's should have to their own

6  children.

7      2.51   On information and belief, prior to the final completion of legal

8  proceedings involving CPS, the defendants Raquel and Nicholas Eliasen withdrew their

9  oldest child from the school she was attending, sold their home on Weida View Lane,

10  and moved out of Washington to the State of Maine, where they currently reside.

11     2.52   On information and belief, the Island County Sheriff's office

12  investigated the circumstances of David's death and, prior to the completion of that

13  investigation, defendants Raquel and Nicholas Eliasen sold their home on Weida View

14  Lane and moved out of Washington to the State of Maine where they currently reside.

15     2.53   On information and belief, at approximately the same time period when

16  Raquel and Nicholas Eliasen moved out of Washington State, defendant Richard

17  Eliasen and Jane Doe Eliasen also left Washington and moved to Maine, there they

18  currently reside.

19     2.54   On information and belief, defendant Raquel Eliasen assisted Richard

20  Eliasen in moving to Maine by selling his personal property.

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4022/ FAX 206-037-2119

### III.   CLAIMS AGAINST DEFENDANTS

**Negligence of Raquel Eliasen;**

3.1     The plaintiffs re-allege the facts stated above in paragraphs 1.1 to 2.54 and incorporate same by this reference as though fully set forth herein.

3.2     The defendant Raquel Eliasen owed a duty of reasonable care to David James Roberts, and to his parents, Shayna and Bryan Roberts, to care for David and to protect him from physical and emotional harm.  The duties of care Raquel Eliasen owed to David James Roberts and plaintiffs Shayna and Bryan Roberts arose from multiple sources including, but not limited to, common law, contract, chapter 43.215 RCW, and chapter 170-296A WAC.

3.3     Raquel Eliasen negligently breached her duties of care to David and Shayna and Bryan Roberts in numerous ways including, but not limited to:

3.3.1    Raquel Eliasen negligently failed to provide reasonable care for David on January 18, 2013;

3.3.2    Raquel Eliasen negligently failed to provide adequate supervision and qualified staff to supervise and care for David on January 18, 2013;

3.3.3    Raquel Eliasen negligently failed to provide a safe environment and safe premises for David on January 18, 2013.

3.3.4    Raquel Eliasen negligently failed to protect David from criminal harm from reasonably foreseeable criminal conduct.

COMPLAINT FOR DAMAGES– 15

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4922/ FAX 206-937-2119

3.3.5   Raquel Eliasen, with knowledge the Plaintiffs would not realize the danger that Nicholas Eliasen and Little Rascals posed to David, negligently failed to properly inform David and/or Shayna or Bryan Roberts of an unreasonable risk of harm to David from his attending Little Rascals Daycare.

3.3.6   Raquel Eliasen negligently failed to properly provide timely and proper medical care to David, a two-year old child in her care.

3.3.7   Rachel Eliasen negligently failed to comply with duties she owed, as an owner of the property at 3192 Weida Lane, to persons invited or authorized to come upon those premises.

3.4   Raquel Eliasen negligently breached her duties of care to David James Roberts and his parents Bryan and Shayna Roberts on January 18, 2013, proximately causing the fatal head injuries that led to David's death on January 20, 2013.

**Negligence of Nicholas Eliasen:**

3.5   The plaintiffs re-allege the facts stated above in paragraphs 1.1 to 2.54 and incorporate same by this reference as though fully set forth herein.

3.6   The defendant Nicholas Eliasen owed a duty of reasonable care to David James Roberts, and to his parents, Shayna and Bryan Roberts, to care for David and to protect him from physical and emotional harm. The duties of care Nicholas Eliasen owed to David James Roberts and plaintiffs Shayna and Bryan Roberts arose from multiple sources including, but not limited to, common law, contract, chapter 43.215

COMPLAINT FOR DAMAGES-- 16

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4022/ FAX 206-337-2119

1  RCW, and chapter 170-296A WAC.

2      3.7    Nicholas Eliasen negligently breached his duties of care to David and

3  Shayna and Bryan Roberts in numerous ways including, but not limited to:

4          3.7.1  Nicholas Eliasen negligently failed to provide adequate care for

5                 David on January 18, 2013;

6

7          3.7.2  Nicholas Eliasen negligently failed to provide adequate

8                 supervision for David on January 18, 2013;

9          3.7.3  Nicholas Eliasen negligently failed to provide a safe environment

10                 and safe premises for David on January 18, 2013.

11          3.7.4  Nicholas Eliasen negligently failed to protect David from

12                 criminal harm from reasonably foreseeable criminal conduct.

13

14          3.7.5  Nicholas Eliasen, with knowledge the Plaintiffs would not

15                 realize the danger that he and Raquel Eliasen and Little Rascals

16                 Daycare posed to David Roberts' health and safety, negligently

17                 failed to properly inform David and/or David's parents of an

18                 unreasonable risk of harm to David from his attending Little

19                 Rascals Daycare.

20          3.7.6  Nicholas Eliasen negligently failed to properly provide timely

21                 and proper medical care to David, a two-year old child in his

22                 care.

23

24          3.7.7  Nicholas Eliasen negligently failed to comply with duties he, as an

25  COMPLAINT FOR DAMAGES-- 17

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA 98116
206-230-4022/ FAX 206-087-2119

26

owner of the property at 3192 Weida Lane, owed to persons invited or authorized to come upon those premises.

3.8    Nicholas Eliasen negligently breached his duties of care to David James Roberts and his parents Bryan and Shayna Roberts on January 18, 2013, proximately causing the fatal head injuries that led to David's death on January 20, 2013.

**Negligence of Richard Eliasen and Jane Doe Eliasen:**

3.9    The plaintiffs re-allege the facts stated above in paragraphs 1.1 to 2.54 and incorporate same by this reference as though fully set forth herein.

3.10    Richard and Jane Doe Eliasen negligently breached duties of care to David and Shayna and Bryan Roberts in numerous ways, including but not limited to:

    3.10.1  Richard and Jane Doe Eliasen negligently failed to comply with duties owed as owners of property at 3192 Wieda View Lane to persons, like David and plaintiffs Shayna and Bryan Roberts, invited or authorized to come upon those premises.

    3.10.2  Richard and Jane Doe Eliasen negligently failed to provide a reasonably safe premises for David while he attended Little Rascals Daycare.

    3.10.3  Richard and Jane Doe Eliasen negligently failed to protect David from criminal harm from reasonably foreseeable criminal conduct on the premises.

    3.10.4  Richard and Jane Doe Eliasen, with knowledge the Plaintiffs

COMPLAINT FOR DAMAGES-- 18

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4922/ FAX 206-937-2110

would not realize that danger Little Rascals posed to David

Roberts' health, and safety, negligently failed to properly warn

David and/or David's parents of an unreasonable risk of harm to

David from his attending Little Rascals Daycare,

3.11    Richard Eliasen and Jane Doe Eliasen negligently breached their duties of care to David, Bryan and Shayna Roberts, proximately causing fatal head injuries on January 18, 2013, which led to David's death on January 20, 2013.

**"Wrongful Death," "Survivorship of Actions" and "Action for Death of a Child":**

3.12    The plaintiffs re-allege the facts and allegations stated above in paragraphs 1 through 3.11 and incorporate same by this reference as though fully set forth herein.

3.13    The defendants listed herein are liable for damages under Washington State's wrongful death, survival and child death statutes, chapter 4.20 RCW, RCW 4.24.010, and all other such applicable law.

3.14    The defendants' violation of the duties described herein caused and/or contributed to the death of David James Roberts.

3.15    At the time of his death, David James Roberts was two years of age and was fault free.

COMPLAINT FOR DAMAGES-- 19

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4922/ FAX 206-937-2119

## IV.   PROXIMATE CAUSE AND DAMAGES

4.1    The plaintiffs re-allege the allegations made in paragraphs 1.1 through 3.15 and incorporate same by reference as though fully set forth herein.

4.2    As a direct and proximate result of the conduct described herein of defendants Raquel Eliasen, Nicholas Eliasen, Richard Eliasen, and Jane Doe Eliasen, David James Roberts suffered serious physical injuries which caused his death.

4.3.    As a direct and proximate result of the conduct described herein of defendants Raquel Eliasen, Nicholas Eliasen, Richard Eliasen, and Jane Doe Elaisen, plaintiffs Shayna Roberts and Bryan Roberts and the Estate of David James Roberts suffered serious emotional and economic and non-economic damages including, but not limited to, the following:

4.3.1   Funereal and burial expenses,

4.3.2   Lost future earnings.

4.3.3   Pain, suffering, anxiety, emotional distress and fear of impending death experienced by David James Roberts prior to his death.

4.4    As a proximate result of the conduct tortious of defendants Raquel Eliasen, Nicholas Eliasen, Richard Eliasen, and Jane Doe Eliasen, plaintiffs Shayna Roberts and Bryan Roberts suffered severe emotional distress, destruction of the parent child relationship with David Roberts, and loss of the love and companionship of their son, David Roberts.

COMPLAINT FOR DAMAGES-- 20

LINDELL LAW OFFICES, PLLC
4409 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4922/ FAX 206-937-2110

## V.   JOINT LIABILITY

5.1   In accord with RCW 4.22.070, Defendants are jointly liable to Plaintiffs as there was no comparative fault on the part of David, Bryan or Shayna Roberts.

## VI.   RESERVATION TO AMEND COMPLAINT

6.1   Plaintiffs Shayna and Bryan Roberts, and Estate of David James Roberts, hereby specifically reserve the right to amend this Complaint to add other parties, such as the State of Washington, Department of Early Learning, and Department of Social and Health Services, and  other causes of action and/or other facts, as investigation, research and/or discovery deem appropriate, and following plaintiffs' compliance with the 60-day waiting period of the Washington State Tort Claim Act, Chapter 4.92 RCW.

## VII.   PRAYER FOR RELIEF

7.1   WHEREFORE, the Plaintiffs pray for judgment as follows against the Defendants named herein as follows:

7.1.1   A judgment of liability, jointly and serverally, in favor of the Plaintiffs against each of the Defendants;

7.1.2   Economic and non-economic damages in an amount to be proven at trial;

7.1.3   Pre-judgment and post-judgment interest as provided by law;

7.1.4   Attorney's fees as may be provided by law;

7.1.5   Awarding them all other damages allowed pursuant to applicable wrongful death, survival, and child death statutes and the Common Law.

7.1.6   Costs; and

COMPLAINT FOR DAMAGES-- 21

LINDELL LAW OFFICES, PLLC
4400 CALIFORNIA AVE. SW, SUITE 100
SEATTLE, WA  98116
206-230-4922/ FAX 206-937-2110

1    7.1.7    Such other and further relief as the court deems fair and equitable.

2

3

4    DATED this _12_ day of January, 2015.

5

6

7

8                                        _____
9                                        ERIC W. LINDELL        WSBA# 18972
                                         Attorney for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    COMPLAINT FOR DAMAGES-- 22          LINDELL LAW OFFICES, PLLC
                                          4409 CALIFORNIA AVE. SW, SUITE 100
                                          SEATTLE, WA  98116
                                          206-230-4022/ FAX 206-937-2119

APPENDIX

Result Type:          Child Protective Team
Result Date:          04 June 2013 0:00
Result Status:        Modified
Result Title:         Consultation Child Protection Team Con
Performed By:         Feldman, Kenneth W, MD on 06 June 2013 11:21
Verified By:          Feldman, Kenneth W, MD on 06 June 2013 11:21
Encounter info:       92582606, CHMC, Outpatient, 10/24/2011 - 10/29/2011

**Consultation Child Protection Team Con (Verified)**

# Document may Not be Signed/Finalized. See End of report for Electronic Authentication of Signature.

## CHILD PROTECTION TEAM REPORT

**ROBERTS, DAVID JAMES**
DOB: 07/06/2010 M  -MR #: 01-12-71-65

**DATE OF CONSULTATION: 06/04/2013**

### SCAN CONSULTATION

Send note to Detective Wallace, Island County Sheriffs Department, Oak Harbor, Washington.

Dear Detective Wallace: Thank you for sending the outside investigation records related to the death of David Roberts. These included his primary care records, past records from Children's, primary care records on his sister, Aria Thomas, date of birth 2/17/2006, interviews with his father, David Roberts. Records from both the Naval Hospital and Skagit Pediatrics were included in the primary care records. Whidbey General ER, recordings of the EMS calls, 2 videos of David, one by his parents and one by the daycare, and interviews with mother, father, and the daycare providers Nicholas and Rachel Eliason.

As you recall, David had initially come to our attention when he was admitted to Harborview on 1/18/13 with a small left-sided subdural hemorrhage associated with massive brain swelling, left greater than right, but with both sides involved. He essentially presented brain dead and died shortly into the Harborview hospitalization. He had lacked other skin findings suggestive of abuse. He also lacked evidence of fractures except for a left-sided parietal fracture with associated small amount of soft tissue scalp swelling. He had abundant retinal hemorrhages.

Since we talked, I have reviewed the retinal photos with our ophthalmologist, Dr. Weiss. There is a large collection of blood locally in the right eye. He, as I had, felt that this was suggestive of a retinoschisis cavity, but due to the photographic quality, he was unable to say with certainty.

The video of David that the daycare provider's took on 1/18/13 in the morning showed David walking about, socializing well. He appeared very happy and interactive. He was responding to the Eliasons. He was carrying a stuffed animal and walking about. While walking, he was not looking where he was going, but still maintained good balance.

The initial call came to EMS. A surprisingly calm and unemotional female voice related "He just started crying and then went to the floor,..couldn't wake him,..not wake him up at all,...still

breathing but irregular, shallow, not awake." In the background, one could hear other children and later a male voice interacting socially with the children. EMS instructed Ms Eliason to have her husband initiate CPR (cardiopulmonary resuscitation). The EMS dispatch call had come at 1313 and Officers King and Vick arrived at 1717 finding a 2-year-old unconscious. They received the report from the daycare that he had been crying and then stopped. They commented "that was all the history we got." They, however, went on to say that he, Mr. Eliason stated that David had been doing fine up until then. They observed him to have a GCS (Glasgow Coma Score) of 3 with 8 breaths a minute of agonal respiration. He was unresponsive with dilated pupils and a glucose of 213. In that initial interaction with the Eliasons there was no mention of a fall. David was decerebrating during their transport to Whidbey General Emergency Room. He arrived at Whidbey General via EMS at 1735. There, it was noted that history was unclear, but a fall was reported which had been unwitnessed. In triage it was noted at 1744 that he had been "coughing, crying really hard - found unresponsive" The symptoms were indicated to have begun just prior to arrival. In the triage note again there was no history of a fall.

In Rachel Eliason's interview with Detective Wallace on the 23rd, she indicated that David had screeched, wobbled and then went backwards.

In Nicholas Eliason's 2/14 police interview, he indicated he heard a loud screech or yell, knew it was David but it had a sharper tone, David wobbled and then collapsed backward on the mat. Both of these statements would suggest that in fact it was not an unwitnessed event.

Back on 1/7, David had what was reported as petechiae on the face. Nicholas Eliason reported in the same police interview on the 7th that when David returned to daycare for the first day, his wife saw marks that looked like broken blood vessels from vomiting or coughing. She pointed them out to the parents who took David to a doctor where petechiae were diagnosed. Rachel, in her interview with Detective Wallace on 1/23, also noted that on 1/7 or 1/8, she saw purple spots around David's eyes, cheeks and neck. David was taken to the doctor where petechiae were diagnosed. However, David was initially seen on the 7th at urgent care at Whidbey Naval by Peggy Warren Elaine Taranto. There she noted that red marks had been seen on the face at daycare that morning. Mother gave that history and reported that it looked like broken blood vessels on the left face and above the collar bones. David was reported to be fussing, pulling his ears, but not vomiting or coughing. Ms Taranto saw a few brown lines on the right neck about 2 cm size, scattered brown spots on the left cheek but no erythema. No diagnosis of petechiae was made. On the 11th, David was seen at Skagit Pediatrics by Holly Lea, a nurse practitioner. It was noted that the petechiae were fewer that day than before. There had been fever yesterday with decreased appetite and runny nose. On exam, she saw a few petechiae of the cheeks, one of the upper back, one of the upper chest and none on the lower body. Her diagnosis was viral disease and spontaneous ecchymosis. Thus, it appears that David did have an earlier event of petechiae which were unexplained by medical illness, although he did have some concurrent upper respiratory infection symptoms.

David had complications from the beginning. His birth was by cesarean after attempted breech version. Birth weight 7 pounds 5 ounces. He spent 5 days in the NICU for poor feeding. There was a past history of decreased fetal movement. By 2 weeks, he had torticollis. He subsequently developed plagiocephaly related to the torticollis. He was treated for both with physical therapy and a helmet. Later in the first year of life, he was diagnosed with motor delays and received further physical and occupational therapy as he was improving from, it he was also observed that he had symptoms of autism. However, by report and by the videos, David was an at least moderately socially interactive toddler. He had severe eczema during early childhood,

frequent colds, frequent otitis medias. In all his records and his sister Aria's records, I see no evidence of past abuse or unexplained injury other than the petechae.

As previously discussed, David sustained a severe head injury with concurrent evidence of impact trauma to the head as defined by the scalp swelling and the skull fracture. His brain swelling was certainly asymmetric, but still was global. The described fall from a standing height would not reasonably explain his brain injury. Likewise, given the severity of the injury it is almost certain he would have been unconscious immediately after the injury, and if alternatively he had a lucid period after some initial concussion, it would be extremely unlikely that it would be more than very brief. The video of him taken earlier that morning shows behavior there is inconsistent with already having this head injury with evolving symptoms. Had we been able to certainly diagnose retinoschisis that is a finding that is very highly associated with abusive head injury. Abundant retinal hemorrhage, such as he sustained is also highly associated. Likewise subdural bleeding such as he sustained in the absence of major trauma history is highly associated with abuse.

I have, since my original note at Harborview, I have also received the autopsy report which failed to identify additional injuries. I am aware that the manner of death is listed as indeterminate. From a clinical viewpoint and from my child abuse pediatric training and experience, I would not be hesitant to list his manner of death as homicide.


Electronically Authenticated by
Kenneth W Feldman, MD 06/06/2013 11:21 A

_____

Kenneth W Feldman, MD , Attending Physician


KWF/clh  Doc #3001501  d: 06/04/2013 08:22 A  t: 06/04/2013 01:00 P  (1601572-)
cc:     Frances T Chalmers, MD
        Jonna D Clark, MD
*Detective Wallace, Island County Sheriff's Department, Oak Harbor, WA
*Patty Turner, Children's Protective Services